IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DR. ROBERT C. BUTLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 3:19-cv-00416 |
| | ) |
| GOVERNOR BILL HASLAM et al., | ) JUDGE RICHARDSON |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Plaintiff Dr. Robert C. Butler filed this pro se action against former Tennessee Governor Bill Haslam and the Executive Director and six members of the Tennessee Board of Parole, asserting claims based on the handling of a hearing on Dr. Butler's petition for exoneration and the subsequent denial of that petition. For the reasons set forth herein, the Court will dismiss the Complaint under 28 U.S.C. § 1915(e)(2).

**I.     Standard of Review**

Because Plaintiff proceeds in forma pauperis, the Court is required by 28 U.S.C. § 1915(e)(2) to conduct an initial review of the Complaint and to dismiss it if it is facially frivolous or malicious, fails to state a claim for which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under [Section 1915(e)(2)] because the relevant statutory

language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

Thus, in reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). The court must then consider whether those factual allegations, accepted as true, "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). The court "need not accept as true legal conclusions or unwarranted factual inferences." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). (quoting *Gregory v. Shelby Cty.*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

A "pro se complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Even under this lenient standard, however, pro se plaintiffs must meet basic pleading requirements. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004).

## II. Factual Background

Plaintiff names as defendants Jim Purviance, Executive Director, Tennessee Board of Parole; Richard Montgomery, Chair, Tennessee Board of Parole; and six members of the Board of Parole, including Zane Duncan, Gary M. Faulcon, Tim Gobble, Gay Gregson, Roberta Nevil Kustoff, and Barrett Rich (collectively, the "parole board Defendants"); and former Governor Bill Haslam. Governor Haslam is sued in his individual capacity only; the parole board Defendants are

sued in both their individual and official capacities.

The Complaint itself is not a model of clarity, but the Court takes judicial notice that Dr. Butler, an African-American man, was tried for the rape of a white female student in 1977, when Dr. Butler was a sociology instructor and doctoral candidate at the University of Tennessee. That trial ended in a mistrial after the jury was unable to reach a verdict. Dr. Butler was retried within the year, and the second trial resulted in his conviction. He was sentenced to life imprisonment. The Tennessee Court of Criminal Appeals affirmed the conviction and the Tennessee Supreme Court denied review. Dr. Butler's first habeas petition filed in this Court in 1980 was granted and his conviction and sentence were vacated. The Sixth Circuit, however, reversed and reinstated the conviction. *Butler v. Rose*, 686 F.2d 1163 (6th Cir. 1982) (en banc).

Dr. Butler then sought post-conviction relief in the Tennessee state courts. The Tennessee Court of Criminal Appeals vacated his conviction on the grounds of ineffective assistance of counsel and remanded for a new trial. *Butler v. State*, C.C.A. No. 1163, 1988 WL 63526 (Tenn. Crim. App. June 23, 1988), *aff'd on reh'g*, 1988 WL 93001 (Sept. 8, 1988). In yet another twist, the Tennessee Supreme Court reversed and reinstated Butler's conviction. *Butler v. State*, 789 S.W.2d 898 (Tenn. 1990).

Dr. Butler again sought habeas relief from this Court. In 1993, Judge Thomas A. Wiseman, Jr., granted the petition, finding that trial counsel had been constitutionally ineffective. The Sixth Circuit affirmed the granting of the writ. *Butler v. Hosking*, No. 93-5976, 47 F.3d 1167 (Table) (6th Cir. Feb. 22, 1995). Thereafter, Judge Wiseman denied the State's Rule 60(b) motion for clarification or relief from the order granting the writ, and the Sixth Circuit again affirmed. *Butler v. Hosking*, No. 96-6092, 1995 WL 435604 (6th Cir. Aug. 1, 1996).

As the Sixth Circuit explained in the latter opinion, Judge Wiseman's original order

3

granting the writ gave the State of Tennessee "60 days in which to schedule a new trial, failing which, all charges against the petitioner will be dismissed." *Id.* at *1. The State sought to stay execution of the judgment while it appealed, but its various requests for a stay were denied. Nonetheless, it did not attempt to retry Dr. Butler within the sixty-day deadline. In May 1995, the State sought permission to retry Dr. Butler, but the state trial court concluded that the time for trying him had expired and granted his motion to dismiss, thus barring his reprosecution. The trial court declined to rule on whether the state was barred from reindicting Dr. Butler. The Tennessee Court of Criminal Appeals affirmed. *Id.* at *2; *see also State v. Butler*, 955 S.W.2d 78 (Tenn. Ct. Crim. App. 1996). The Tennessee court likewise affirmatively concluded that the district court's order "permanently barred re-prosecution of the appellee's indictment stemming from the 1977 rape charges" and noted that, "[o]nce the appellee's charges were dismissed, there were no longer charges upon which to base re-indictment." 955 S.W.2d at 80 & n.2. In any event, Dr. Butler was never reindicted or retried. He was released from prison in 1993 at the time his habeas petition was granted. Documents attached to the Complaint reflect that his criminal record was formally expunged in 2000, pursuant an Order for Expungement of Record issued by the state trial court under Tenn. Code Ann. § 40-32-101. (*See* Doc. No. 1-1, at 33–34 (Dec. 18, 2000 letter from counsel referencing enclosed Order of Expungement).)

Despite the fact that all charges against Dr. Butler ultimately were dismissed and never refiled, effectively exonerating him in at least one sense of the word, Dr. Butler apparently sought formal exoneration from the State of Tennessee in 2018. Although Dr. Butler does not expressly explain as much in the Complaint itself, it appears from the exhibits attached thereto that he first sought compensation from Tennessee Board of Claims for his "wrongful incarceration" of sixteen and one-half years in April 2018. (*See* Doc. No. 1-1, at 9 (Claim for Damages, State of Tennessee

4

Division of Claims Administration).) That body denied his application (*id.* at 11–12 (appeal of decision of Board of Claims)), after notifying him, even before meeting to consider his application, that a claimant must first be exonerated by the governor in order to receive compensation for a wrongful conviction (*see id.* at 35 (citing Tenn. Code Ann. § 9-8-108(a)(7))). Dr. Butler thereafter filed an application for exoneration. (*Id.* at 15 (Nov. 9, 2018 Letter to R. Butler from Board of Parole, Executive Clemency Unit, providing notice of hearing date on application for exoneration).)

An "exoneration hearing" was conducted on December 12, 2018 before the Tennessee Board of Parole. According to Dr. Butler, even though the Department of Treasury knew it was "not supposed to conduct a hearing on Plaintiff's behalf, they went forward with a malicious and relentless 'double jeopardy' hearing against Plaintiff, that is, Plaintiff was retried all over again." (Doc. No. 1, at 3.) Plaintiff complains that the all-white parole board Defendants "operated from the premise that Plaintiff was guilty as found[] by the jury at his second trial." (*Id.*) Plaintiff claims that "[a]ll of the Defendants . . . clearly violated Plaintiff's double jeopardy rights," as well as his rights under the Fifth, Eighth, and Fourteenth Amendment during his exoneration hearing "by telling him that he was guilty of a crime that he had been exonerated of almost 27 years ago." (*Id.* at 4.) The parole board Defendants informed him that they would vote to recommend that his petition for exoneration be denied, but they also assured him that then-Governor Haslam would make his final decision before leaving office on January 18, 2019. Plaintiff did not "hear[] anything from the Governor before he left office." (*Id.*) He also claims, however, that he was informed when he called the Governor's office that none of his exoneration paperwork had reached Governor Haslam's desk. (*Id.*)

Plaintiff asserts that Governor Haslam was responsible for appointing to the Board of

5

Parole individuals "of high moral character . . . who would vow to follow the dictates of both the United States and Tennessee Constitutions." (*Id.* at 5.) Plaintiff claims that he repeatedly informed Governor Haslam by mail that his constitutional rights were being violated, but the "Governor stood by and did nothing." (*Id.*) Plaintiff claims that each of the parole board Defendants was responsible for assuring that Plaintiff received a just and fair hearing and that he be accorded due process in his exoneration hearing. Instead, they allegedly colluded to violate Plaintiff's constitutional rights.

Plaintiff seeks $500,000 in compensatory damages and $750,000 in punitive damages. He also seeks declaratory and injunctive relief in the form of a "mandate that the Defendants come into full compliance with the Civil Rights Act of 1964 and the state and federal laws that govern the Governor's and Board of Parole offices." (Doc. No. 1, at 8.)

### III. Analysis

As the background summary above makes clear, Plaintiff's conviction was vacated and he was never retried. Moreover, Tennessee statute currently provides, and has provided for many years, that a person who has had criminal charges against him dismissed, or whose conviction has been reversed or overturned, may petition the court having jurisdiction of the prior action for the destruction of all public records pertaining to the charge. Tenn. Code Ann. § 40-32-101. Plaintiff indicates that he received an Order of Expungement under Section 40-32-101 in 2000. (*See* Doc. No. 1, at 4; Doc. No. 1-1, at 33–34.) In theory, at least, "[t]he effect of expunging the records of a criminal charge is to restore the person to the position he or she occupied prior to the arrest or charge. Thus, persons whose records have been expunged [pursuant to Tenn. Code Ann. § 40-32-101] may properly decline to reveal or acknowledge the existence of the charge." *Pizzillo v. Pizzillo*, 884 S.W.2d 749, 754 (Tenn. Ct. App. 1994) (citing *State v. Sims*, 746 S.W.2d 191, 199

(Tenn. 1988)). In other words, the effect of Judge Wiseman's granting of the writ and the expungement of the record was to return Plaintiff to the position he occupied before being charged with any crime: innocent in the eyes of the law.

Things are not so simple, though, for a person who seeks compensation under Tennessee law for the years of imprisonment he served as the result of a wrongful conviction. The Tennessee Board of Claims is authorized to "hear claims for compensation by persons wrongfully imprisoned," but only if such persons have been "granted exoneration pursuant to [Tenn. Code Ann.] § 40-27-109." Tenn. Code Ann. § 9-8-108(a)(7).

Section 40-27-109 establishes the governor's authority to grant exoneration:

> After consideration of the facts, circumstances and any newly discovered evidence in a particular case, the governor may grant exoneration to any person whom the governor finds did not commit the crime for which the person was convicted. No person may apply for nor may the governor grant exoneration until the person has exhausted all possible state judicial remedies.

*Id.* § 40-27-109(a) (emphasis added). On its face, this statute appears to pertain only to a person whose conviction remains intact even after the individual has exhausted all appeals and been denied post-conviction relief.[1]

In practice, however, while the vacatur of a conviction and expungement of the criminal record restore a defendant to his pre-conviction status of being presumed innocent in the eyes of the law, *exoneration* under Tennessee law appears to require proof of actual innocence, and the burden of proving such innocence is on the person applying for exoneration. *See* Tenn. Comp. R.

---

[1] Moreover, exoneration would appear to provide only redundant relief to a person whose conviction has already been vacated and whose criminal record has been expunged under Tenn. Code Ann. § 40-32-101, insofar as exoneration under Section 40-27-109(a) results in the immediate expungement of "all records of the person's arrest, indictment and conviction, and shall automatically restore all rights of citizenship to the person." *Id.* § 40-27-109(b).

7

& Regs. 1100-01-01-.03(10)(c) ("'Exoneration' means the discretionary act of the Governor of abolishing a conviction and restoring all rights of a person based upon *innocence* in the case at issue under T.C.A. § 40-27-109." (emphasis added)); *id.* 1100-01-01-16(d)(5) ("[T]he burden remains on the applicant to establish that he or she is entitled to [exoneration]."). Of course, a conviction cannot be abolished if it does not even exist, and proving a negative poses a substantial hurdle, but the procedure for seeking compensation for wrongful conviction under Tennessee law apparently requires both. *See* Andy Humbles, *Gov. Bill Haslam Exonerates Wilson County Man Wrongfully Convicted of Rape*, Tennessean, https://www.tennessean.com/story/news/2017/12/20/gov-bill-haslam-exonerates-wilson-county-man-wrongfully-convicted-rape/969816001/ [https://perma.cc/XP7B-95SG] (last updated Dec. 27, 2017) (explaining that Governor Haslam exonerated Lawrence McKinney in December 2017 based on the fact that the fact that his 1978 rape conviction had been overturned by the Tennessee courts in 2009 as a result of DNA evidence, and despite the unanimous recommendation by the Board of Parole that his application be denied).

Tennessee regulations establish the procedure for seeking exoneration. The Board of Parole, among other duties, is granted the power to review requests for "executive clemency." Tenn. Comp. R. & Regs. 1100-01-01-.16. "Executive clemency" is defined broadly to encompass exoneration. *Id.* 1100-01-01-.03(10)(c). When an applicant makes a request for any form of executive clemency, including exoneration, the applicant is to be promptly advised as to whether his case will be scheduled for a hearing. In addition to advising him of the date, time, and location of the hearing, the applicant must be advised that he is entitled to appear at the hearing and to present witnesses and other evidence. *Id.* 1100-01-01-.16(d)(1). The appropriate judge and district attorney general are also notified and may present their views and recommendations concerning clemency for the applicant. The regulations authorize the parole board to collect information and

8

to question the applicant about any matter the board deems relevant. *See generally id.* 1100-01-01-16(d)(3), (6). Again, the regulation expressly states that the burden of proof is on the applicant. *Id.* 1100-01-01-16(d)(5).

At the end of the hearing, the parole board will either inform the applicant of its recommendation or take the matter under advisement. "In either event, the Board shall advise the applicant that its recommendation to the Governor is non-binding and that the Governor will review any recommendation by the Board." *Id.* 1100-01-01-16(d)(7). The board then forwards to the governor its written recommendation, a brief statement of its reasons, the views of individual board members if the recommendation is not unanimous, and the complete file. *Id.* 1100-01-01-16(d)(8).

Irrespective of the parole board's recommendation, the governor then "may," in his sole discretion, "grant exoneration to any person whom the governor finds did not commit the crime for which the person was convicted." Tenn. Code Ann. § 40-27-109(a).

In this case, as set forth above, it appears that Dr. Butler engaged in this process; the parole board recommended that his application be denied following the hearing in December 2018, and Governor Haslam did not grant Dr. Butler's application prior to leaving office. Plaintiff now asserts that all Defendants involved in this process are liable to him under 42 U.S.C. §§ 1983, 1985, and 1986.[2] He claims that Defendants acted in a "racist and blatant fashion" to violate the prohibition against double jeopardy and his right to due process. As set forth below, the Court finds that the Complaint fails to state a colorable claim against any defendant.

---

[2] Plaintiff also invokes 42 U.S.C. § 1965(c), but no such statutory provision exists.

A.      Parole Board Defendants

Plaintiff states that the parole board Defendants are sued in both their official capacity and their individual capacities. A suit against the parole board Defendants in their official capacity is equivalent to a suit against the Board of Parole and the State of Tennessee itself. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984); *accord Haynes v. Bd. of Paroles Members/Chairman*, No. 3:18-CV-00441, 2018 WL 3426179, at *2 (M.D. Tenn. July 16, 2018). The Eleventh Amendment to the United States Constitution bars claims for damages against a state, its agencies, and its employees in their official capacities unless a state has a waived its immunity. *Quern v. Jordan*, 440 U.S. 332, 337 (1979), *overruled on other grounds by Hafer v. Melo*, 502 U.S. 21, 27 (1991); *see Cowan v. Univ. of Louisville Sch. of Med.*, 900 F.2d 936, 940 (6th Cir. 1990) ("[A] suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). Tennessee has not waived its immunity to suit. *Berndt v. State of Tenn.*, 796 F.2d 879, 881 (6th Cir. 1986). Moreover, a state is not a person within the meaning of Section 1983. *Will v. Mich. Dep't of St. Police*, 491 U.S. 58, 71 (1989). Plaintiff's claims against the parole board Defendants in their official capacity are therefore barred by the Eleventh Amendment and do not fall within the purview of Section 1983. *See Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005) (dismissing damages claim against state parole board under the Eleventh Amendment, citing *Pennhurst*, 465 U.S. 89, 100–01 (1984)).[3] These claims are subject to dismissal without prejudice.

---

[3] While the exception to sovereign immunity recognized by *Ex Parte Young*, 209 U.S. 123 (1908), provides that state officials sued in their official capacity are not immune from suit for prospective injunctive relief, Plaintiff does not actually seek prospective injunctive relief. Rather, he seeks a declaration that past action by the individual parole board Defendants violated his constitutional rights. This type of declaration does not fall within the scope of *Ex Parte Young*. *See*

*See Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014) ("Dismissals for lack of jurisdiction based on Eleventh Amendment immunity should be made without prejudice." (citing *Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005)).

The individual-capacity claims against the parole board Defendants are also subject to dismissal. First, the Sixth Circuit has recognized that "parole board members are absolutely immune from liability for their conduct in individual parole decisions when they are exercising their decision making powers" and for "mak[ing] recommendations concerning parole." *Draine v. Leavy*, 504 F. App'x 494, 496 (6th Cir. 2012) (citations and internal quotation marks omitted). This immunity derives from the absolute immunity accorded judges engaged in judicial functions. *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967). "[T]he absolute immunity that protects judicial officers engaged in judicial functions also protects other state officials engaged in adjudicative functions." *Draine*, 504 F. App'x at 495 (quoting *Dean v. Byerley*, 354 F.3d 540, 555 (6th Cir. 2004)). Although the cases within the Sixth Circuit discussing immunity for parole board members do so within the context of decisions by parole board members not to recommend parole, the Court finds that it applies equally to parole board members' decisions not to recommend executive clemency, insofar as the parole board members, in that capacity, are likewise called upon to engage in an adjudicative function. *Accord Talk v. Gillis*, 122 F.3d 1074 (Table), 1997 WL 558389, at *1 (9th Cir. Sept. 3, 1997) (according absolute immunity to parole board members sued for allegedly violating the plaintiff's constitutional rights by denying him a parole board hearing for clemency consideration); *Lucien v. Preiner*, 967 F.2d 1166, 1167 (7th Cir. 1992) (stating: "In evaluating petitions for executive clemency, the [state Prisoner Review Board] is essentially performing a

---

*Green v. Mansour*, 474 U.S. 64, 73–74 (1985) (holding that the petitioners were not entitled to a declaratory judgment that the respondent state official violated federal law in the past).

judicial function," and holding that a prosecutor is absolutely immune for statements made in a letter to the Prisoner Review Board recommending the denial of executive clemency); *Goff v. Rousey*, No. 4:16-CV-00807, 2017 WL 4295257, at *3 (E.D. Ark. Aug. 31, 2017) (according absolute quasi-judicial immunity to parole board members based on their denial of clemency application), *report & recommendation adopted*, No. 4:16-CV-00807, 2017 WL 4295196 (E.D. Ark. Sept. 27, 2017); *Chambers v. Granholm*, No. 1:11-CV-42, 2011 WL 447016, at *2 (W.D. Mich. Feb. 4, 2011) (granting absolute immunity to parole board members, where the "actions for which Plaintiff complains were taken by defendant parole board members in their quasi-judicial role of making a recommendation to the governor regarding an application for commutation").

In addition, even if the parole board members were not entitled to absolute immunity for actions taken in connection with their consideration of Dr. Butler's exoneration application, the Complaint does not state a colorable claim against them under 42 U.S.C. § 1983, 1985 or 1986. To state a claim under Section 1983, a plaintiff must show that he was deprived of a right secured by the Constitution or laws of the United States and that the deprivation was caused by a person acting under color of law. *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014). While the parole board Defendants acted under color of law in conducting the hearing and making a recommendation to the governor, Plaintiff's allegations fail to establish the violation of a constitutional right.

First, Plaintiff has not shown a violation of his right to due process. Under the Fourteenth Amendment, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The due process clause has both procedural and substantive components. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012), but the court construes the Complaint as intending to state a claim for violation of the right to

procedural due process.[4] "To establish a procedural due process claim, a plaintiff must show that (1) [he] had a life, liberty, or property interest protected by the Due Process Clause; (2) [he] was deprived of this protected interest; and (3) the state did not afford [him] adequate procedural rights." *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014).

In this case, Plaintiff has not shown that he was entitled to any particular process in connection with petitioning for exoneration. More importantly, the Supreme Court has repeatedly held that "pardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review." *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 276 (1998) (quoting *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981)). More specifically, due process rights do not attach to clemency proceedings, unless the state creates some specific process. *See, e.g.*, *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981); *id.* at 46 ("In terms of the Due Process Clause, a Connecticut felon's expectation that . . . he will be pardoned is no more substantial than an inmate's expectation, for example, that he will not be transferred to another prison; it is simply a unilateral hope. A constitutional entitlement cannot 'be created—as if by estoppel— merely because a wholly and expressly discretionary state

---

[4] Substantive due process claims arise from the Supreme Court's recognition that the Due Process Clause guarantees "more than fair process" and "cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (internal quotation marks and citations omitted); *In re City of Detroit, Mich.*, 841 F.3d 684, 699 (6th Cir. 2016) (quoting *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014)). The Sixth Circuit has explained that the "class of interests" protected by the doctrine of substantive due process "is 'narrower than those protected by procedural due process.'" *In re City of Detroit*, 841 F.3d at 699 (quoting *Range*, 763 F.3d at 588 n.6). "Substantive-due-process claims are 'loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that shock the conscience.'" *Doe v. Miami Univ.*, 882 F.3d 579, 597 (6th Cir. 2018) (quoting *Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997)). "There is . . . no substantive expectation of clemency." *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 283 (1998). The Complaint does not state a claim based on a violation of substantive due process.

privilege has been granted generously in the past. . . . The ground for a constitutional claim, if any, must be found in statutes or other rules defining the obligations of the authority charged with exercising clemency."). Plaintiff does not contest the adequacy of the state's procedure in this case; he does not argue that the state failed to comply with that procedure, and he has not shown that he was deprived of any constitutionally protected liberty or property interest. Thus, even if they were not entitled to absolute immunity, Plaintiff could not establish that the members of the Board of Parole deprived him of the right to procedural due process.[5]

Nor has Plaintiff stated a claim under Section 1983 based on violation of the prohibition against double jeopardy contained in the Fifth Amendment. The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., amend. V; *see also United States v. Dixon*, 509 U.S. 688, 695–96 (1993). Plaintiff fails to state a claim based on the Double Jeopardy Clause, because the proceeding before the Board of Parole was not a criminal prosecution and did not put Plaintiff at risk of "life or limb." No matter what the parole board Defendants recommended, Plaintiff was not in "jeopardy,"

---

[5] The Supreme Court considered a due process clemency claim in *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272 (1988). The Court noted that, although an inmate sentenced to death has a constitutionally protected life interest in not being summarily executed by prison guards, *id.* at 281, four justices (Rehnquist, Scalia, Kennedy, and Thomas, JJ.) held that an Ohio inmate under death sentence had no protected life interest in clemency proceedings where "the procedures in question do no more than confirm that the clemency and pardon powers are committed, as is our tradition, to the authority of the executive." *Id.* at 276. However, in a concurring opinion, Justice O'Connor, joined by Justices Souter, Ginsburg and Breyer, concluded that "some minimal procedural safeguards apply to clemency proceedings. Judicial intervention might, for example, be warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process." *Id.* at 289 (O'Connor, J., concurring). The concurring justices nonetheless did not believe a remand was warranted, because the process the petitioner received satisfied "whatever limitations the Due Process Clause may impose on clemency proceedings." *Id.* at 290.

because he did not face the possibility of incarceration or any other form of punishment.

Finally, the Court does not construe the Complaint as attempting to state a claim based on violation of the Equal Protection Clause of the Fourteenth Amendment for purposes of a claim under Section 1983. Even if Plaintiff intended to state such a claim based on race discrimination, he has not shown that he was treated differently—under the same facts and circumstances—from a member of a different race. *See Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 624 (6th Cir. 2013). He has not shown discriminatory intent on the part of any Defendant or that he was treated differently from any similarly situated white individual petitioning for exoneration.[6]

The purported claims under Sections 1985 and 1986 fare no better. Section 1985(1) and (2) pertain, respectively, to preventing a government officer from performing his official duties and to intimidating a party, witness, or juror from attending any court of the United States. Both subparts are clearly inapplicable in this case. To state a claim under subsection 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of C & J v. Scott*, 463 U.S. 825, 828–29 (1983). The acts alleged to have deprived the plaintiff of equal protection must be the result of class-based discrimination. *Vakilian v. Shaw*, 335 F.3d 509, 518–19 (6th Cir. 2003). This is something Plaintiff has not adequately alleged. Plaintiff has

---

[6] Dr. Butler is similarly situated to Lawrence McKinney, whom Governor Haslam exonerated in December 2017, in the sense that they are both African American and the parole board voted in both of their cases to deny exoneration. Dr. Butler, however, has not identified a similarly situated *white* comparator. And, of course, in one critical respect, Dr. Butler is not similarly situated to Lawrence McKinney: Mr. McKinney's claim of actual innocence was supported by DNA evidence.

not stated a claim based on violation of his rights under the Equal Protection Clause or any resulting injury. He also has not alleged an overt act by any Defendant that establishes the existence of a conspiracy to violate his equal protection rights. He therefore has not stated a claim under Section 1985(3) either.

Section 1986 creates a cause of action against any person with knowledge of a conspiracy in violation of Section 1985 and power to prevent or aid in the prevention of such violation, but who neglects or refuses to do so. Plaintiff has not alleged any facts suggesting the existence of a conspiracy in violation of Section 1985 and therefore cannot state a claim under Section 1986 either.

In sum, all claims against the parole board Defendants in their official capacity are barred by sovereign immunity, and they are entitled to absolute quasi-judicial immunity with respect to the individual-capacity claims. Alternatively, even if they were not immune, the Complaint fails to state a claim under 42 U.S.C. § 1983, 1985, or 1986 against the parole board Defendants in their individual capacity.

### B. Governor Haslam

The claims against former Governor Haslam appear to be based entirely on his alleged failure to comply with his duty to appoint to the Board of Parole members of "high moral standing," his failure to appropriately oversee the functions of the Board of Parole in response to Plaintiff's letters to him, and, perhaps, his denial of Plaintiff's petition for exoneration. Plaintiff does not allege that Governor Haslam participated in the hearing at which his rights were allegedly violated. He alleges, in fact, that Governor Haslam never even saw his "exoneration" paperwork. (Doc. No. 1, at 4.).

For purposes of a claim under Section 1983 against Governor Haslam, the Court finds that

Plaintiff's vague and conclusory allegations fail to show that any action of Governor Haslam deprived Plaintiff of a right secured by the United States Constitution. Insofar as Plaintiff may have intended to state a due process claim, the Court notes that the governor's decision whether to grant exoneration is purely discretionary. *See* Tenn. Code Ann. § 40-27-109(a) ("[T]he governor *may* grant exoneration to any person whom the governor finds did not commit the crime for which the person was convicted." (emphasis added)); Tenn. Comp. R. & Regs. 1100-01-01-.03 ("'Exoneration' means the discretionary act of the Governor of abolishing a conviction . . . under T.C.A. § 40-27-109."). No constitutional right to exoneration exists, and, under the procedure established by state statute and regulation, the governor owes no particular process to an individual who seeks exoneration. The Complaint also does not state a claim against Governor Haslam based on the violation of Double Jeopardy Clause or the Equal Protection Clause for purposes of a claim under Section 1983. Governor Haslam was not involved in the exoneration hearing, and Plaintiff has not established that his exoneration petition was treated differently from other similarly situated petitions based on his race.

Finally, for the same reasons that the claims under 42 U.S.C. § 1985 and 1986 against the parole board Defendants fail, the same claims against Governor Haslam also fail. All claims against Governor Haslam in his individual capacity will be dismissed with prejudice.

## IV. Conclusion

The Court certainly understands Plaintiff's grievance. He spent many years in prison for a crime as to which all charges have been dismissed and as to which he currently stands entirely not guilty under the law. And one can certainly understand how this situation might call for a substantial remedy. But this Court cannot entertain remedies that are not appropriately awardable by this Court, and thus it cannot entertain a remedy as to which a claim has not been adequately

stated. For the reasons set forth herein, the Complaint will be dismissed in its entirety. An appropriate order is filed herewith.

_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE